# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THURMAN LEROY ROGERS, JR., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LENG CHA, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-01381-AWI-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFFS' FIRST AMENDED COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM, WITHOUT LEAVE TO AMEND<br><br>(ECF Nos. 6, 8)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS** |

Thurman Leroy Rogers, Jr., Sheryl Dawn Dilldine, and Shirley Ann Farley are proceeding *pro se* and in *forma pauperis*[1] with this civil rights action pursuant to 42 U.S.C. § 1983. Before the Court for screening is the First Amended Complaint. (ECF Nos. 6, 8.) For the reasons described below, the Court recommends dismissing the First Amended Complaint for failure to state a claim and without leave to amend.

**I.    BACKGROUND**

Plaintiffs filed the Complaint commencing this action on October 13, 2017. (ECF No. 1). The Court screened the Complaint and found that it failed to state a cognizable claim. (ECF No. 5.) The Court provided Plaintiffs with leave to file an amended complaint to cure the deficiencies

---

[1] Plaintiff Shirley Ann Farley has not filed an application to proceed *in forma pauperis*, nor has she paid the filing fee. However, as discussed below, the FAC does not state a claim for relief and amendment would be futile. Accordingly, the Court recommends that Farley's claims be dismissed without leave to amend.

1

identified by the Court. (*Id.* at 6.) The Court provided Plaintiffs with guidance on the standard for stating a claim for relief under the various grounds raised by Plaintiffs in their Complaint and an explanation as to why the Complaint was insufficient to state a claim for relief. (ECF No. 5 at 3-5 (setting out legal standards for § 1983 liability, governmental entity liability, malicious prosecution under § 1983, and defamation, and explaining the deficiencies of the Complaint).)

On April 13, 2018, Plaintiffs filed their First Amended Complaint ("FAC") (ECF Nos. 6, 8.).

## II.   SCREENING REQUIREMENT

Under 28 U.S.C. § 1915(e)(2), the Court must conduct a review of a *pro se* complaint to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim, it must be dismissed. *Id.* An action is frivolous if it is "of little weight or importance: having no basis in law or fact" and malicious if it was filed with the "intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.* at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins*

*v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### III. PLAINTIFFS' ALLEGATIONS

The FAC alleges claims under § 1983 for violation of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights, as well as a claim for § 1983 malicious prosecution. (*See* ECF Nos. 6, 8.) The FAC names as defendants the Fresno County Department of Social Services/Child Welfare Department ("Child Welfare Department"), Fresno Police Department, Erica Regalado, Bryan Williams, Leng Cha, Jessica Alfaro, Felicia Calloway, and Anthony Norwood (collectively "Defendants"). (ECF Nos. 6, 8.)

The FAC includes the following factual allegations:

On March 7, 2017, Plaintiff Sheryl Dilldine went to the local high school at 2:45 p.m. to pick up her minor child, T.F., a student at the school. (ECF Nos. 6, 8.) T.F. was not at the designated pick up location, so Dilldine went into the school's office to have T.F. paged over the school's intercom system. The office repeatedly paged T.F., but T.F. did not respond. Dilldine and office staff also checked various places on the high school campus where T.F. might be, but were unable to locate her. At 3:50 p.m., after spending an hour attempting to locate T.F. at the school, Dilldine headed towards her home, intending to continue her search for T.F.

At approximately 5:30 p.m., as Dilldine was reaching home, she received a telephone call from Fresno police officer in training, Defendant Erica Regalado. Regalado told Dilldine that they had located T.F., that there had been an incident involving T.F., and that T.F. had been in the school's School Resource Center ("SRC") office where SRC Officer Chester Stoeckel was interviewing her. Officer Stoeckel apparently did not hear the intercom when the office was paging T.F.

Regalado advised Dilldine that Dilldine needed to come back to the school to pick up T.F. and take her home. Dilldine asked Regalado what happened to T.F. and why T.F. had been detained, interviewed, and an investigation conducted without Dilldine's consent. Regalado

3

refused to answer Dilldine's questions or give Dilldine any information over the phone, and again merely advised Dilldine that she needed to come to the school to pick up T.F.

Dilldine refused, stating that the school had detained T.F.; interviewed and interrogated T.F. for more than an hour after school, outside of Dilldine's presence and while Dilldine was on campus looking for her; sent Dilldine away without telling her where T.F. was located; and she (Dilldine) would not rush right back to the school to pick up T.F. Dilldine explained that "since the school detained her for this long against my wishes and refused to let me speak to her, or tell my why she is detained, [] the school could continue to detain her until we could get this straightened out, or the school could do what the school district did last time [there was] an incident like this, which was notify the on campus police officer Myers, and let him and a school counselor take [T.F.] back to the star ward at Clovis Community Hospital and we will meet you there again and have her evaluated." (ECF Nos. 6 at 9, 8 at 9) (alterations made to original to correct capitalization and spelling).

Regalado again told Dilldine that she needed to come to the school to both speak with Regalado and pick up T.F. Dilldine responded, "[I]f you can't tell me what is going on, and refuse to answer my questions, and are detaining my child against my wishes, if you want to talk to us you bring her home." (ECF Nos. 6 at 10, 8 at 10.) Regalado continued to refuse to provide Dilldine with any information about what was going on and indicated that she (Regalado) would not bring T.F. home. The telephone conversation then ended.

At approximately 7:00 p.m., Plaintiff Thurman Leroy Rogers. Jr., who lives with Dilldine, received a telephone call from Defendant Bryan Williams, a Sergeant with the Fresno Police Department. Williams advised Rogers that Williams had contacted Child Protective Services ("CPS"), that there was a CPS worker at the school, and that Dilldine needed to come to the school and speak with the CPS worker and pick up T.F.

Rogers asked Williams what had happened to T.F., why she was being detained, and why CPS had been called. Williams responded that he could not answer Rogers' questions. Rogers responded that they detained T.F. so they should bring her home. Williams then agreed to bring T.F. home.

At approximately 7:46 p.m., Defendants Williams, Regalado, and Cha, a CPS worker, arrived at the home of Rogers and Dilldine. When Williams rang the doorbell, Rogers and Dilldine opened the interior door but kept the exterior security screen door closed, and spoke to Williams through the screen door. Williams requested entry into the home, but Rogers and Dilldine refused to allow entry without a warrant, stating that they do not trust the Fresno Police Department. Williams said that he could not discuss what was going on unless Rogers and Dilldine allowed the officers inside the home. Rogers and Dilldine refused to allow them in or to answer any questions unless they were told what was going on and why T.F. was being detained. Rogers and Dilldine also stated that they would not answer questions without their lawyer present. Rogers and Dilldine then shut the interior door and started discussing their legal options.

Approximately ten minutes later, Williams again rang the doorbell. Rogers and Dilldine answered the door, again opening only the interior door and leaving the security screen door closed. Williams and Regalado were again standing on the front porch of the home. Cha was also present, and there were other officers located on the lawn. Williams told Rogers and Dilldine that he had been given authorization to discuss the situation through the screen door. Williams and Regalado video and audio recorded the exchange, including videotaping the inside of the home, and did so without obtaining permission or consent from either Rogers or Dilldine.

Williams and Regalado, while standing on the porch, informed Rogers, in the presence of Dilldine and in a manner that allowed the neighbors to hear, that Rogers was being accused of sexual misconduct with T.F., who is a minor. Williams and Regalado then proceeded to interrogate Rogers without providing Rogers with an opportunity to seek legal counsel. Williams stated that he knows kids lie and that Dilldine needed to allow T.F. back into the home. Rogers denied the accusations, and stated that T.F. has a history of making these types of allegations against other men, all of which had been found to be untrue.[2]

Dilldine also stated that she did not believe the allegations against Rogers. Dilldine stated that the police were not going to charge Rogers, and T.F. had already been admitted to the

---

[2] Although the FAC states the previous allegations T.F. made against other men were found to be "true," the Court assumes that this was a typographical error and that Plaintiffs intended to indicate that the previous allegations by T.F. against other men were false or "untrue."

hospital two times previously for cutting herself, so Dilldine did not want to risk T.F. harming herself again or making further false allegations against Rogers. Dilldine thus requested that T.F. remain in police custody and be detained in juvenile detention until morning, when everything could be sorted out. Neither Williams nor Regalado indicated that there were any allegations against Dilldine.

Williams refused to detain T.F. and continued to insist that Dilldine let T.F. back into the home. Rogers and Dilldine refused to allow T.F. back into the home, but did allow Cha into the home to gather clothes and an overnight bag for T.F. While inside the home, Cha told Dilldine and Rogers that it was understandable that they would not want T.F. in the home with the risk of more false allegations or the risk that she might hurt herself, and that if he were in the same position, he would do the same thing. Cha told Dilldine he would be in touch in the morning to discuss T.F. and the situation. Cha then grabbed T.F.'s overnight bag and left the house. Dilldine also provided Cha with the name and contact information for T.F.'s biological mother, Plaintiff Shirley Ann Farley. However, neither Cha nor the Fresno Police Department reached out to Farley for potential emergency placement of T.F.[3]

On March 8, 2017, Cha returned to the home of Rogers and Dilldine to discuss a plan for T.F. Rogers and Dilldine had outlined a plan, which included T.F. transferring to a private Christian school, with the hope that the Christian school, along with therapy for T.F. and getting T.F. away from her current school, would help T.F. Cha indicated his approval for the plan, but stated that he had to get approval from his supervisor, "Anthony Norwood."

When Cha mentioned Norwood's name, Rogers "had a traumatic episode," telling Cha about the history between Rogers and Norwood. Rogers called Norwood "a Fucking baby thief," and a "son of a bitch." (ECF Nos. 6 at 12, 8 at 12.) Rogers told Cha, among other things, that Norwood took Rogers' four-year-old daughter away from Rogers back in 2000, placed her temporarily in a home in which convicted felons were residing, and allowed Rogers' daughter to be adopted by someone in another town two weeks later. Rogers told Cha that this incident

---

[3] The FAC also alleges that Rogers was never charged with any crime in relation to the allegations regarding sexual misconduct.

resulted in an investigation by the governor's office into the conduct of Norwood and other employees of the Child Welfare Department, and ultimately to disciplinary action against Norwood and some of these employees. Norwood and other employees with the Child Welfare Department still blame, and have not forgiven, Rogers, for being subjected to investigation and disciplinary action.

Cha was visibly upset at what Rogers said about Norwood. The following day, March 9, 2017, after Cha met with Norwood, CPS immediately took action to bring charges against Dilldine in a malicious prosecution. Yet, by this time, there was irrefutable evidence that the allegations made by T.F. were physically impossible as T.F. was not even in the home on the dates she alleges the incident(s) occurred. Despite this evidence, the prosecution of Dilldine continued, through the efforts of Norwood and the other defendants, including defendants Jessica Alfaro and Felicia Calloway. The FAC does not indicate the type of charges brought against Dilldine or the status of those charges.

Alfaro, a social worker with the Child Welfare Department submitted "false, inaccurate, and just plain lies to the juvenile court" in furtherance of the malicious prosecution of Dilldine. (ECF Nos. 6 at 12, 8 at 12.) Alfaro "went so far as to state in court records that the minor needed to be removed because Ms. Dilldine does not [believe] Mr. Rogers is guilty," even though Rogers had been cleared of any wrongdoing months previously. Alfaro engaged in this conduct knowingly, intentionally, and with malice and intent to deprive Dilldine and Farley of their civil rights, and with the intent to defame and cause Rogers unnecessary emotional and psychological harm "as retribution for the governor[']s investigation" into the Department of Social Services. (*Id.*)

Defendant Felicia Calloway, a social worker supervisor with the Child Welfare Department approved and authorized the submission of false, inaccurate, and damaging reports to juvenile court and did so knowingly, willingly, and maliciously, and with the intent of causing the malicious prosecution of Dilldine. In doing so, Calloway also deprived Plaintiff Shirley Farley of her civil rights, and caused Rogers severe emotional and psychological damage.

Plaintiffs seek an award of punitive and exemplary damages.

## IV. DISCUSSION

### A. Section 1983 Claims

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, which provides a mechanism for private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (§ 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'") (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived the plaintiff of her rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). A plaintiff must plead factual allegations against each individual defendant alleged to have violated her constitutional rights that are sufficient to state a plausible claim for relief and that place each individual defendant on notice of the claim against them. *Iqbal,* 556 U.S. at 678–79; *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009). The allegations must link the actions or omissions of each named defendant to a violation of her rights. *Iqbal,* 556 U.S. at 676–77; *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton,* 588 F.3d 1218, 1235 (9th Cir. 2009).

#### 1) Claims against Fresno Police Department and Fresno County Department of Social Services/Child Welfare Department

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Instead, a governmental entity may be held liable under § 1983 only where a policy, practice, or

custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Id.* ("Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

To state a claim for governmental entity liability under § 1983, a plaintiff must allege facts demonstrating "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

The FAC does not allege any policy or custom of the Fresno Police Department or the Fresno County Department of Social Services/Child Welfare Department that caused Plaintiffs' injury. Plaintiffs have thus failed to state a § 1983 claim against these governmental entity defendants and these defendants are accordingly subject to dismissal.

### 2) **Claims against Erica Regalado and Bryan Williams**

Plaintiffs Rogers and Dilldine allege that defendants Williams and Regalado violated their rights under the Fourth, Fifth, and Fourteenth Amendments by video and audio recording Rogers and Dilldine and the inside of their home while the officers were on the porch of the home talking with Rogers and Dilldine about T.F. and the accusations against Rogers. Plaintiffs allege that the audio and video recordings were done without consent and while Williams and Regalado were acting under color of law. Plaintiffs also allege that Williams and Regalado discussed the accusations against Rogers from the porch in a manner that allowed the neighbors to hear what was being said, and continued to discuss the accusations even though Rogers and Dilldine had stated that they refused to answer any questions without their lawyer present.

#### a) *Fourth Amendment – Unlawful Search Claim*

"The threshold inquiry in any Fourth Amendment analysis is whether the government's conduct is included in the Amendment's coverage, in other words, whether it amounts to a 'search' for constitutional purposes." *United States v. Gonzalez*, 328 F.3d 543, 546 (9th Cir.

9

2003) (citing 1 William E. Ringel, *Searches and Seizures, Arrests and Confessions*, § 8.1 (2nd ed. 2000)). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

"At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusions." *Id.* at 31 (citations and quotation marks omitted). "[T]he Fourth Amendment draws a firm line at the entrance to the house." *Id.* at 40 (quoting *Payton v. New York*, 445 U.S. 573, 590 (2015)). "That line . . . must be not only firm but also bright—which requires clear specification of those methods of surveillance that require a warrant." *Id.* Thus, where the government uses a surveillance "device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." *Id.* (surveillance that uses sensory-enhancing technology or advanced surveillance techniques—such as thermal-imaging devices, ultrasound, other imaging technology, or enhanced audio devices—"is a 'search' and is presumptively unreasonable without a warrant").

However, regular unenhanced video and audio surveillance "does not in itself violate a reasonable expectation of privacy." *United States v. Taketa*, 923 F.2d 665, 677 (9th Cir. 1991). Indeed, "the police may record what they normally may view with the naked eye." *Id.* An individual does not have a "reasonable expectation of privacy that would preclude video surveillance of activities already visible to the public." *United States v. Gonzalez*, 328 F.3d 543, 548 (9th Cir. 2003).

Here, Plaintiffs allege that Williams and Regalado video and audio recorded Rogers and Dilldine and the inside of their home, while Williams and Regalado were standing on the porch outside the security screen door. According to the allegations, these defendants had come to the home to return T.F. and to discuss the accusations of misconduct made against Rogers. Williams requested that he and Regalado be allowed inside to discuss the T.F. situation, but Rogers and Dilldine refused to allow them entry, and instead chose to speak with Williams and Regalado through the closed security screen door.

Plaintiffs have not alleged that they were forced to speak to Williams or Regalado, were forced to open the interior door, or were prevented from closing the interior door to stop the video and audio recording. Plaintiffs also have not alleged that these defendants were using any form of enhanced surveillance devices, or recording anything that was not visible or audible to these defendants. The mere audio and video recording through the security screen door of what these defendants could themselves observe and hear while standing on the porch talking with Rogers and Dilldine is not a "search." *See Taketa*, 923 F.2d at 677. Accordingly, Plaintiffs have failed to state a Fourth Amendment claim against defendants Williams and Regalado, and the claim is subject to dismissal.

### b) <u>Fifth Amendment – Self Incrimination Claim</u>

The Fifth Amendment provides individuals with the right against compulsory self-incrimination, U.S. Const. amend. V, and is made applicable to the states by the Fourteenth Amendment, U.S. Const. amend. XIV sec. 1; *Griffin v. California*, 380 U.S. 609, 611 (1965) (citing *Malloy v. Hogan*, 378 U.S. 1 (1964)).

> The Constitution explicitly prohibits compelling an accused to bear witness "against himself": it necessarily does not proscribe incriminating statements elicited from another. Compulsion upon the person asserting it is an important element of the privilege, and "prohibition of compelling a man . . . to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him." It is extortion of information from the accused himself that offends our sense of justice.

*Couch v. United States*, 409 U.S. 322, 328 (1973) (citation omitted).

Here, the FAC does not allege that Plaintiffs were compelled to provide self-incriminating statements to law enforcement, or that compelled self-incriminating statements were used against them in a criminal proceeding. Further, neither Rogers nor Dilldine were in custody, and they voluntarily reopened the interior door and re-engaged with Williams and Regalado even after asserting that they would not answer questions without an attorney present. There is no allegation that Rogers and Dilldine were prevented from closing the interior door or otherwise ending the conversation.

Plaintiffs have failed to state a Fifth Amendment claim for compulsory self-incrimination

against Williams or Regalado.[4] This claim is accordingly subject to dismissal.

### c) *Fourteenth Amendment – Due Process*

The Fourteenth Amendment prohibits states from depriving its citizens "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, sec. 1. Due process claims can be either procedural or substantive. To state a procedural due process claim, a plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived [her] of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

Here, the FAC does not allege that Williams or Regalado deprived Plaintiffs of a liberty or property interest. Instead, the allegations of the FAC indicate that Regalado and Williams reached out to Dilldine, initially via telephone, to discuss why T.F. was detained and the accusations against Rogers. Regalado and Williams refused to give information to Plaintiffs over the phone about why T.F. was detained and questioned, and also initially refused to discuss this information through the screen door, but then agreed to do so. These defendants then proceeded to tell Plaintiffs why T.F. was detained and the accusations against Rogers. Because Plaintiffs had refused to allow the officers to come into the home, this information was conveyed to Plaintiffs from the porch where neighbors may have overheard what was being said.

The FAC also alleges that Dilldine and Rogers provided Williams, Regalado, and Cha with information regarding Plaintiff Farley, the biological mother of T.F., but that none of these defendants contacted Farley for potential emergency placement. The FAC does not, however, allege that these defendants had any duty to contact Farley regarding emergency placement of T.F., that Farley qualified for potential emergency placement of T.F., or allege any other facts that demonstrate that Williams, Regalado, or Cha violated Farley's constitutional rights.

These and the other allegations of the FAC are insufficient to state a claim against

---

[4] To the extent Plaintiffs are seeking to bring a Fifth Amendment due process claim against Defendants, the claim fails. *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment . . . appl[ies] only to actions of the federal government—not to those of state or local governments.").

Regalado or Williams for deprivation of a constitutionally protected liberty or property interest. Accordingly, Plaintiffs have failed to state either a procedural or a substantive due process claim against Williams or Regalado.

### 3) **Malicious Prosecution Claims**

"In this circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir.1985) (en banc)). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought [] against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

A malicious prosecution claim under § 1983 is based on state law elements. *See Usher*, 828 F.2d at 562. Under California law, a plaintiff must plead and prove that a prior proceeding commenced by or at the direction of the defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice. *Villa v. Cole,* 4 Cal. App. 4th 1327, 1335 (1992); *Sagonowsky v. More,* 64 Cal. App4th 122, 128 (1998). The element of favorable termination, "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." *Pattiz v. Minye,* 61 Cal. App. 4th 822, 826 (1998). "If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *Id.*

      *a)*    <u>Fresno County Department of Social Services/Child Welfare Department</u>

The FAC alleges that Plaintiffs met with defendant Fresno County Department of Social Services "on several occasions to discuss the malicious prosecution, and even provided proof at various stages of the prosecution," but that

> the Department refused to address the matter or let the information . . . be presented in court unless Mr. Rogers, Ms. Dilldine, and Ms. Farley all agree[d] to sign non-disclosure agreements and agree[d] to never mention or discuss this, which we refused, and then the Department of Social Services threatened to bring a more sever[e] charge against Ms. Dilldine if she did not cooperate. She did not cooperate, then at the next hearing the Department of Social Services/Child Welfare Department raised her charge to a more severe charge.

(ECF Nos. 6 at 11, 8 at 11.)

As noted previously, a governmental entity may be held liable under § 1983 only where a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights . . . ." *Monell*, 436 U.S. at 694. The FAC does not allege any policy or custom of the Fresno County Department of Social Services/Child Welfare Department that caused the alleged malicious prosecution. Plaintiffs have thus failed to state a § 1983 claim for malicious prosecution against Fresno County Department of Social Services/Child Welfare Department, and this defendant is accordingly subject to dismissal.

### b) *Leng Cha, Jessica Alfaro, Felicia Calloway, and Anthony Norwood*

Plaintiffs allege that defendants Cha, Alfaro, Calloway, and Norwood pursued charges against Dilldine even though these defendants knew such charges to be false and untrue, and that these defendants knowingly, willingly, and with malice submitted or approved submission of false, inaccurate, and damaging reports, "and just plain lies" to the juvenile court to further the malicious prosecution of Dilldine. (ECF Nos. 6 at 12, 13, 8 at 12, 13.) Plaintiffs do not, however, allege that any prosecution against Dilldine has terminated in her favor. Plaintiffs also do not allege that the prosecution of Dilldine was "conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights," and that the malicious prosecution claim is therefore cognizable under § 1983. *Usher,* 828 F.2d at 561. Thus, the FAC fails to state a claim for § 1983 malicious prosecution against Defendants.

### B.     State Law Claim—Defamation

Under California law, defamation is defined as the "intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999). California Civil Code § 47

14

provides that, with qualified exceptions, "a privileged publication is one made: (a) In the proper discharge of an official duty," and "(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure."

Here, Plaintiffs allege that Defendants submitted or approved submission of false reports and other information to courts in judicial proceedings to pursue charges against Dilldine. As alleged, the reports would be privileged pursuant to California Civil Code § 47. Thus, Plaintiffs have failed to allege a claim for defamation against Defendants in relation to the allegedly false information and reports provided to the courts.

## V. CONCLUSION AND RECOMMENDATION

The Court has screened the First Amended Complaint and finds that it fails to state a cognizable claim under the relevant legal standards. The Court further recommends that Plaintiffs not be granted leave to amend. Plaintiffs were provided guidance in the Court's previous order (ECF No. 5) regarding the deficiencies in their claims, and were provided the opportunity to amend their complaint to cure those deficiencies. Plaintiffs have been unable to do so, and the Court finds that further amendment would be futile. *See Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.")

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiffs' § 1983 claims be DISMISSED with prejudice for failure to state a claim;
2. Plaintiffs' state law defamation claim be dismissed without prejudice for failure to state a claim;
3. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within twenty-one (21)** days after being served with these findings and recommendations, Plaintiff may file written

objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 18, 2018**　　　　　　　／s／ *Erica P. Grosjean*
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE